1

2      UNITED STATES DISTRICT COURT
       WESTERN DISTRICT OF WASHINGTON
3                  AT TACOMA

4

5   THOMAS MATISON and KAREN
    MATISON,                                    CASE NO. C16-5431 BHS

6                   Plaintiffs,
                                                ORDER DENYING
7          v.                                   DEFENDANT'S MOTION TO
                                                DISMISS PURSUANT TO FED. R.
8   JOEL PEARCE, et al.,                        CIV. P. 12(b)(2)

9                   Defendants.

10

11         This matter comes before the Court on Defendant Joel Pearce's ("Pearce") motion

12   to dismiss for lack of personal jurisdiction.  Dkt. 13.  The Court has considered the

13   pleadings filed in support of and in opposition to the motion and the remainder of the file

14   and denies the motion because (1) Pearce's status as a corporate officer does not

15   somehow insulate him from personal jurisdiction arising from his alleged tortious actions

16   aimed at Washington State residents; and (2) Plaintiffs Thomas and Karen Matison have

17   alleged actions by Pearce that sufficiently demonstrate the Court's personal jurisdiction

18   over him.

19                  **I. PROCEDURAL AND FACTUAL BACKGROUND**

20         On May 11, 2016, Plaintiffs filed a complaint in Pierce County Superior Court

21   against Defendants Rockwest, Inc. ("Rockwest"), Pearce, and Turnbull and Born,

22   P.L.L.C., seeking to quiet title, obtain declaratory relief that collection on a promissory

note is time-barred, that a deed of trust is void, and that the substitution of trustee to the

deed of trust is void. Dkt. 3. Plaintiffs also seek damages in a tort claim against

Rockwest and Pearce under Washington's Consumer Protection Act ("CPA"), RCW

Chapter 19.86, for alleged violations of the Washington Collection Agency Act

("WCAA"), RCW Chapter 19.16. *Id.*

On June 3, 2016, Rockwest and Pearce removed to this Court asserting jurisdiction

pursuant to 28 U.S.C. § 1332. Dkt. 1. On June 10, 2016, Rockwest filed a timely

answer. Dkt. 9; *see* Fed. R. Civ. P. 81(c).

On July 18, 2016, Pearce filed his motion to dismiss for lack of personal

jurisdiction, presently before the Court. Dkts. 13, 14. On August 5, 2016, Plaintiffs

responded. Dkts. 15, 16, 17. On August 12, 2016, Pearce replied. Dkt. 20.

## II. DISCUSSION

Pearce moves to dismiss Plaintiffs' claim against him for lack of personal

jurisdiction.[1] Dkt. 13 at 1. Pursuant to Fed. R. Civ. P. 12(b)(2), a party may assert the

defense of lack of personal jurisdiction by filing a pre-answer motion.

Personal jurisdiction refers to the Court's power to render a valid and enforceable

judgment on a particular defendant. *World-Wide Volkswagen Corp. v. Woodson*, 444

U.S. 286, 291 (1980). This power is limited by the Due Process Clause of the Fourteenth

---

[1] Pearce's motion to dismiss initially states that it is brought pursuant to "Civil Rule 12(b)(6)." Dkt. 13 at 1. Later, in its actual argument, it references "CR 12(b)(2)" in setting forth a legal standard relevant to motions to dismiss for lack of personal jurisdiction. Dkt. 13 at 4. Because the substance of Pearce's motion argues for dismissal based solely on a theory that the Court lacks personal jurisdiction, the Court will treat Pearce's motion as a motion to dismiss under Fed. R. Civ. P. 12(b)(2).

1  Amendment, which requires that out-of-state defendants have sufficient "minimum

2  contacts" with the forum state such that requiring the defendant to litigate in that forum

3  would comport with "traditional notions of fair play and substantial justice." *Int'l Shoe*

4  *Co. v. Washington*, 326 U.S. 310, 316 (1945).

5  "Where a defendant moves to dismiss a complaint for lack of personal jurisdiction,

6  the plaintiff bears the burden of demonstrating that jurisdiction is appropriate."

7  *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 800 (9th Cir. 2004).  When a

8  court rules on the motion based on affidavits and discovery materials rather than an

9  evidentiary hearing, the plaintiff need only make a *prima facie* showing of personal

10  jurisdiction.  *See Ochoa v. J.B. Martin & Sons Farms, Inc.*, 287 F.3d 1182, 1187 (9th Cir.

11  2002).  "Although the plaintiff cannot simply rest on the bare allegations of its complaint,

12  uncontroverted allegations in the complaint must be taken as true."  *Schwarzenegger*, 374

13  F.3d at 800 (internal quotation marks and citations omitted).  "Additionally, any

14  evidentiary materials submitted on the motion are construed in the light most favorable to

15  the plaintiffs and all doubts are resolved in their favor."  *Ochoa*, 287 F.3d at 1187

16  (internal quotation marks omitted).

17  Pearce's motion to dismiss is premised on the argument that his corporate role

18  immunizes him from personal jurisdiction for the actions he takes on behalf of his

19  corporation.  The Court rejects this argument because (A) Pearce's corporate role does

20  not shorten the reach of Washington's long-arm statute and (B) Plaintiffs have alleged

21  actions by Pearce sufficient to establish the necessary "minimum contacts" with

22  Washington State.

**A.    Fiduciary Shield Doctrine**

Pearce's argument implicates the "fiduciary shield doctrine."  Although he does not expressly reference this doctrine in his briefing, it is the sum of his jurisdictional argument: particularly, that personal jurisdiction is deficient because "Plaintiff's allegations against Pearce are premised exclusively on his role as a corporate officer of Rockwest."  Dkt. 13 at 4.

"Under the fiduciary shield doctrine, a person's mere association with a corporation that causes injury in the forum state is not sufficient in itself to permit that forum to assert jurisdiction over the person."  *Davis v. Metro Prods., Inc.*, 885 F.2d 515, 520 (9th Cir. 1989).  However, in applying the Supreme Court's precedent from *Calder v. Jones*, 465 U.S. 783 (1984), and *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770 (1984), the Ninth Circuit in *Davis* recognized that the Supreme Court "did not consider the existence of a state-created corporate form to create a due process limit on jurisdiction." *Davis*, 885 F.2d at 521.  Under this guiding principle, the Ninth Circuit largely abandoned the fiduciary shield doctrine, determining that a forum's "long-arm statute may, consistent with constitutional due process, allow assertion of personal jurisdiction over officers of a corporation as long as the court finds those officers to have sufficient minimum contacts with [the forum]."  *Davis*, 885 F.2d at 522.

1    Although various courts approach the fiduciary shield doctrine inconsistently,[2] this

2    Court is bound by the decision of the Ninth Circuit in *Davis*.  Accordingly, the fiduciary

3    shield doctrine is of no consequence where the applicable long-arm statute extends to the

4    full extent authorized by the Due Process Clause.  *Davis*, 885 F.2d at 522 (construing

5    Arizona long-arm statute coextensive with due process requirements to establish personal

6    jurisdiction despite defendant's assertion of fiduciary protections).  *See also Brink v. First*

7    *Credit Res.*, 57 F. Supp. 2d 848, 859 (D. Ariz. 1999) ("If the state's long-arm statute

8    allows jurisdiction to the extent allowed by the Constitution, then employing the

9    fiduciary shield to insulate employees is inconsistent with the wide reach of the statute.");

10   *Kukui Gardens Corp. v. Holco Capital Grp., Inc.*, 664 F. Supp. 2d 1103, 1110 (D. Haw.

11   2008) ("[I]t is unclear whether the doctrine continues to be a viable defense to personal

12   jurisdiction. Instead, the proper inquiry is to look specifically at the minimum contacts of

13   the individual regardless of whether that individual was acting within his or her official

14   capacity."); 3A William Fletcher, *Fletcher Cyclopedia of the Law of Private*

15   *Corporations* § 1296.20 (2015) ("The fiduciary shield doctrine is not available where the

16   forum state's long-arm statute is coextensive with the full reach of due process.").

17       Because Washington's long-arm statute is coextensive with due process

18   requirements, *Shute v. Carnival Cruise Lines*, 113 Wn. 2d 763, 766–67 (1989), Pearce's

19

20       [2] *See, e.g.*, *Giusto v. Ashland Chemical Co.*, 994 F. Supp. 587 (E.D. Pa. 1998); *TriStrata Technology, Inc. v. Neoteric Cosmetics, Inc.*, 961 F. Supp. 686 (D. Del. 1997); *Glass v. Kemper*

21   *Corp.*, 930 F. Supp. 332 (N.D. Ill. 1996).  *But see Kukui Gardens Corp. v. Holco Capital Grp., Inc.*, 664 F. Supp. 2d 1103 (D. Haw. 2008); *Brink v. First Credit Res.*, 57 F. Supp. 2d 848, 859 (D. Ariz. 1999); *Nassar v. Florida Fleet Sales Inc.*, 69 F. Supp. 2d 443 (S.D.N.Y. 1999); *Davis*,

22   885 F.2d 515.

role as a corporate officer does not prevent the Court from exercising personal

jurisdiction over him.

**B.     "Minimum Contacts" Analysis**

Instead of examining Pearce's corporate role in determining whether personal

jurisdiction exists, the proper inquiry before the Court is whether Pearce's alleged actions

satisfy a "typical minimum contacts analysis." *Kukui Gardens*, 664 F. Supp. 2d at 1111.

The Ninth Circuit applies a three-part test to determine whether due process is satisfied

by exercising personal jurisdiction over an out-of-state defendant based on his contacts

with the forum:

> (1) The non-resident defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof; or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws;
> (2) the claim must be one which arises out of or relates to the defendant's forum-related activities; and
> (3) the exercise of jurisdiction must comport with fair play and substantial justice, i.e. it must be reasonable.

*Yahoo! Inc. v. La Ligue Contre Le Racisme Et L'Antisemitisme*, 433 F.3d 1199, 1205–06

(9th Cir. 2006).  Under this minimum contacts analysis, the plaintiff bears the burden of

establishing the first two prongs.  *CollegeSource, Inc. v. AcademyOne, Inc.*, 653 F.3d

1066, 1076 (9th Cir. 2011).  The burden then shifts to the defendant "to set forth a

'compelling case' that the exercise of jurisdiction would not be reasonable."  *Id.*

1    **1.     Purposeful direction**

2         When determining whether a defendant has purposefully directed activities toward

3    a forum state, the Ninth Circuit employs the "*Calder*-effects test."[3]  *Mavrix Photo, Inc. v.*

4    *Brand Techs., Inc.*, 647 F.3d 1218, 1228 (9th Cir. 2011).  This test "requires that 'the

5    defendant allegedly must have (1) committed an intentional act, (2) expressly aimed at

6    the forum state, (3) causing harm that the defendant knows is likely to be suffered in the

7    forum state.'"  *Id.* at 1228 (quoting *Brayton Purcell LLP v. Recordon & Recordon*, 606

8    F.3d 1124, 1128 (9th Cir. 2010)).

9         Plaintiffs' factual allegations satisfy this test.  They allege that Pearce contacted

10   them at their Washington home in December 2005 and began collecting payments on an

11   allegedly fraudulent promissory note.  Dkt. 1-1 at 5–6.  They further allege Pearce,

12   without a required license, telephoned in May 2014 and left a message, seeking to collect

13   on the loan and threatening foreclosure absent payment.  Dkt. 1-1 at 7, 12.  The *Calder*-

14   effects test is satisfied by such alleged wrongful attempts at debt collection.  *See, e.g.*,

15   *Weakley v. Redline Recovery Servs., LLC*, 723 F. Supp. 2d 1341, 1344 (S.D. Cal. 2010),

16   _____

17        [3] Citing *Hollande Am. Line Inc. v. Wartsila N. Am., Inc.*, 485 F.3d 450, 460 (9th Cir.
     2007), Pearce argues that the *Calder*-effects test applies only to "intentional torts," not actions
18   brought pursuant to a statute.  Dkt. 20 at 2.  This misapplies the Ninth Circuit's analysis in
     *Hollande*.  Referring to the *Calder* decision, the Ninth Circuit in *Hollande* used the term
19   "intentional tort" to describe any tortious actions intentionally targeting a forum. 485 F.3d at
     460. It contrasted such "intentional torts" with tortious acts which do not involve the active and
20   intentional targeting of a forum state, such as negligently placing a faulty product into the stream
     of commerce.  *Id.*  Such an analysis does not limit the *Calder*-effects test to wrongful acts like
21   assault, battery, conversion, etc., defined in law school textbooks as "intentional torts."  As set
     forth in the *Calder* decision, the Court's analysis therein applies wherever a defendant engages in
22   "intentional, and allegedly tortious, actions . . . expressly aimed at [the forum]," as opposed to
     "mere untargeted negligence."  *Calder*, 465 U.S. at 789.

ORDER - 7

1    clarified on denial of reconsideration, No. 09-CV-1423 BEN, 2010 WL 3033801 (S.D.

2    Cal. Aug. 2, 2010) ("Because individual Defendants . . . contacted Plaintiff . . . in

3    California, by telephone to collect Plaintiff's alleged debt, Defendants have performed

4    acts or transactions within the forum.").  Such alleged actions are clearly both intentional

5    and aimed at Washington residents.  Additionally, Plaintiffs claim to have suffered

6    resulting harm occurring within the forum state.  Dkt. 1-1 at 6–8, 13.

7           The facts outlined in the complaint adequately allege that Pearce, while acting on

8    behalf of Rockwest, was instrumental in establishing, directing, and/or ratifying these

9    debt collection practices.  Pearce's repeated assertions that he "is merely the sole

10   shareholder and president of Rockwest," is of no consequence in the face of such

11   allegations.  Dkt. 13 at 2.  *See State v. Ralph Williams' N. W. Chrysler Plymouth, Inc.*, 87

12   Wn.2d 298, 322 (1976) (Under the CPA, "[i]f a corporate officer participates in the

13   wrongful conduct, or with knowledge approves of the conduct, then the officer, as well as

14   the corporation, is liable for the penalties. Corporate officers cannot use the corporate

15   form to shield themselves from individual liability.").

16          **2.    Claims arising from Pearce's forum related activities**

17          The second prong of the minimum contacts analysis demands that "the claim must

18   be one which arises out of or relates to the defendant's forum-related activities."  *Yahoo!*,

19   433 F.3d at 1206.  As stated above, Plaintiffs' claim against Pearce arises from their

20   allegations that Pearce engaged in unlawful debt collection practices aimed at

21   Washington State.  Specifically, Plaintiffs bring a claim under the CPA for alleged

22   violations of the WCAA.  Dkt. 1-1 at 10–13.  Because Plaintiffs' claim against Pearce is

ORDER - 8

1    premised on Pearce's debt collection activities aimed at Washington State, it properly

2    arises from his forum related activities.

3        **3.    Reasonableness**

4        After a plaintiff satisfies the first two prongs of the minimum contacts analysis, the

5    burden falls upon the defendant "to set forth a 'compelling case' that the exercise of

6    jurisdiction would not be reasonable." *CollegeSource*, 653 F.3d at 1076.  Pearce once

7    again relies on his corporate position, arguing that the Court's exercise of personal

8    jurisdiction would be unreasonable because his contacts with the forum were based on his

9    role as Rockwest's officer and agent.  Dkt. 20 at 5–6.  For the reasons expressed above,

10   the Court rejects this argument.

11       Pearce also contends that subjecting him to litigation in Washington is

12   unreasonable where his corporation, Rockwest, is vicariously liable for his actions. Dkt.

13   20 at 5–6.  Although Pearce contends that this means Plaintiffs will receive "no marginal

14   substantive benefit" from his inclusion, Dkt. 20 at 6, the Court finds otherwise.  Plaintiffs

15   cannot recover from Pearce on a judgment solely against Rockwest.  If Rockwest lacks

16   assets to compensate Plaintiffs for any damages sustained by Pearce's and Rockwest's

17   alleged violation of the CPA, a dismissal would effectively allow Pearce to shield himself

18   from personal liability for his tortious conduct. *See Ralph Williams,* 87 Wn.2d at 322

19   ("Corporate officers cannot use the corporate form to shield themselves from individual

20   liability.").  The purpose of vicarious liability is to protect the injured by imputing tort

21   liability to the principal of the agent, not to allow an agent to escape responsibility for his

22   own tortious acts. *Johnson v. Harrigan-Peach Land Dev. Co.*, 79 Wn.2d 745, 753 (1971)

1    ("An officer of a corporation, consequently, is liable for a tort committed in the course

2    and within the scope of his official duties to the corporation the same as any other agent

3    or servant is liable for his torts, for an agent is not exonerated from the consequences of

4    his torts by the facts that, in committing them, he acted for his principal.").

5         Most importantly, Pearce has failed to address any of the seven reasonableness

6    factors set forth in *Rio Properties, Inc. v. Rio Int'l Interlink*, 284 F.3d 1007, 1021 (9th

7    Cir. 2002).  Lacking any other argument,[4] Pearce has failed to articulate a basis whereby

8    the Court might consider the exercise of personal jurisdiction to be unreasonable.

9    Therefore, the Court finds that the third prong of the minimum contacts analysis has been

10   satisfied.  While Plaintiffs' allegations that Pearce is liable for violating the CPA remain

11   unproven, they are more than adequate to establish a *prima facie* showing of personal

12   jurisdiction.

13

14

15

16

17

18

19   _____

20   [4] In his reply, Pearce does allude to the definition of "collection agency" under RCW
     19.16.100(5)(6) of the WCAA, suggesting that his role as an agent might preclude *personal*

21   *liability* for Plaintiffs' CPA claim.  Dkt. 20 at 5.  Such an argument is relevant to a motion to
     dismiss pursuant to Fed. R. Civ. Pro. 12(b)(6) for failure to state a claim.  The Court will not

22   consider it in assessing *personal jurisdiction* on a Fed. R. Civ. P. 12(b)(2) motion, particularly
     when raised only in passing by the moving party's reply.

1

## III. ORDER

2      Therefore, it is hereby **ORDERED** that Pearce's motion to dismiss (Dkt. 13) is

3 **DENIED**.

4      Dated this 23rd day of August, 2016.

5

6                                                    BENJAMIN H. SETTLE
                                                     United States District Judge
7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22